182 N.J. Super. 540 (1982)
442 A.2d 1032
NEW JERSEY STATE PAROLE BOARD, RESPONDENT,
v.
JAMES BYRNE, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 4, 1982.
Decided January 18, 1982.
*543 Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.
Stanley C. Van Ness, Public Defender, attorney for appellant (Jane Ellen Haburay, Assistant Deputy Public Defender, of counsel; Lawrence Y. Bitterman, Assistant Deputy Public Defender, on the brief).
James R. Zazzali, Attorney General, attorney for respondent (Andrea M. Silkowitz, Deputy Attorney General, of counsel; Lyle P. Hough, Jr., Deputy Attorney General, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
We deal here with an appeal from a decision of the New Jersey State Parole Board in fixing the parole eligibility date of an inmate under the Parole Act of 1979, N.J.S.A. 30:4-123.45 et seq. The Legislature, in adopting that act, shortened parole eligibility dates for inmates who were repeat offenders and whose parole eligibility date had been set under prior law. The Parole Act of 1948 had provided that a second, third or fourth offender as defined in the act would respectively be eligible for parole after serving one-half, two-thirds or four-fifths of his maximum sentence less time off for good behavior and work credits. N.J.S.A. 30:4-123.12. The Parole Act of 1979 shortened these periods for persons previously classified under N.J.S.A. 30:4-123.12 to, respectively, one-third, one-half and two-thirds of the maximum sentence imposed, less time off for good behavior and work credits. Further, the Parole Act of 1979 provided that unless evidence developed or produced at a hearing showed that there was a substantial likelihood that an inmate would commit a crime under the laws of this State if *544 paroled, he should be released when he reached his parole eligibility date. N.J.S.A. 30:4-123.53. This represented a substantial easing of parole requirements under the Parole Act of 1948, N.J.S.A. 30:4-123.1 et seq., which provided that an inmate be paroled "only if the board is of the opinion that there is a reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society." N.J.S.A. 30:4-123.14. See Monks v. N.J. Parole Board, 58 N.J. 238 (1971).
The Parole Act of 1979, however, includes a provision which in certain cases will limit the benefits of the new law to repeat offenders classified under the former Parole Act. N.J.S.A. 30:4-123.51 provides that
... if the prosecuting attorney or the sentencing court advises the board that the punitive aspects of the sentence imposed on such inmates will not have been fulfilled by the time of parole eligibility calculated pursuant to this subsection, then the inmate shall not become primarily eligible for parole until serving an additional period which shall be one-half of the difference between the primary parole eligibility date calculated pursuant to this subsection and the parole eligibility date calculated pursuant to [N.J.S.A. 30:4-123.12].
The consequence of such advice from the prosecutor or sentencing court is thus to limit the inmate to obtaining one-half of the maximum, lessening of the periods for parole eligibility under the new law. N.J.S.A. 30:4-123.51 then includes a provision the validity of which has given rise to this appeal. The section recites:
If the prosecuting attorney or the sentencing court advises the board that the punitive aspects of the sentence have not been fulfilled, such advice need not be supported by reasons and will be deemed conclusive and final. Any such decision shall not be subject to judicial review except to the extent mandated by the New Jersey and United States Constitutions.
The record concerning the history of appellant's offenses is scanty. The parties agree, however, that he is a fourth offender having been sentenced to a term of not less than 15 years nor *545 more than 17 years on April 2, 1976.[1] Thus, he was entitled to some relief under the 1979 act. Accordingly, by letter dated April 15, 1980 the Parole Board asked the prosecutor whether the punitive aspects of appellant's sentence would be fulfilled if he became eligible for the maximum reduction under N.J.S.A. 30:4-123.51. A chart accompanying the letter indicated that appellant's parole eligibility date, if he were allowed the full benefit of the 1979 act, would be September 23, 1981, after allowance of credits. The chart indicated that if the punitive aspects of his sentence had not been fulfilled, his eligibility date would be September 5, 1982. The prosecutor, by letter dated May 29, 1980, indicated that the punitive aspects of the sentence would not be so satisfied if defendant were eligible for parole on the earlier date. The board then notified appellant by letter dated June 17, 1980 that his eligibility date had been advanced to May 25, 1983.[2] He appeals the fixing of this date, asserting that the due process and equal protection rights have been violated by the procedures followed. U.S.Const., Amends. V, XIV. He further alleges that the decision by the Parole Board to limit the benefit given him under the Parole Act of 1979 is a discretionary act subject to appellate review under N.J.Const. (1947), Art. VI, § V, par. 4.
We deal first with a preliminary procedural problem. As already noted, the prosecutor, by letter dated May 29, 1980, stated his determination that the punitive aspects of defendant's sentence would not be fulfilled by the time of the earlier possible eligibility date. The parole board advised appellant of his amended parole eligibility date on June 17, 1980. Appellant's appeal was taken from the action of the Parole Board and *546 not the prosecutor. It could therefore be argued that a review of the validity of the prosecutor's action is not before us. Nevertheless, we believe we should deal with the entire controversy on the merits. Undoubtedly there are other inmates who will also be granted partial relief under the Parole Act of 1979. Indeed, the record in this case includes a chart which shows that of 11 inmates sentenced in Passaic County by a particular judge, in seven cases it was decided by the prosecutor that the punitive aspects of the sentence would not be fulfilled if the maximum benefit of N.J.S.A. 30:4-123.51 were allowed the inmate. While we do not know how many inmates sentenced throughout the State may be accorded only partial relief under N.J.S.A. 30:4-123.51, it is certain that the issues raised on this appeal, if not decided now, will be raised again.
Initially, in considering the validity of N.J.S.A. 30:4-123.51 we must determine what factors the Legislature intended the prosecutor and judge to examine in making their decisions. It will be noted, of course, that the section is written in a most general way. There is no explicit direction that the prosecutor or court consider the circumstances of the particular crime for which the inmate has been sentenced. Nor is there a mandate that the prosecutor or court take into account the inmate's record prior to his conviction or subsequent conduct while in prison. Rather, the prosecutor and judge are simply told to determine whether the punitive aspects of the sentence imposed will have been fulfilled by the time of the earlier of the two possible shortened parole eligibility dates.
In the absence of explicit standards in N.J.S.A. 30:4-123.51 we hold that the criteria to be considered by the prosecutor and sentencing judge are implicit in the very requirement that it is they who determine whether the punitive aspects of the sentence have been fulfilled at the time of the maximum shortened eligibility date. It seems apparent that the Legislature, in directing that this determination be made by the persons or their successors who participated in the disposition of the case *547 leading to the inmate's incarceration, conceived that they would consider the circumstances of the inmate's criminal conduct in committing the offense for which he had been sentenced as well as the other circumstances which contributed to the fixing of the sentence. This is logical since the sentencing court and prosecuting attorney would be the authorities with knowledge of what the inmate had done. If a determination of whether the punitive aspects of a sentence had been fulfilled at the time of parole eligibility was to be made on the basis of the inmate's subsequent conduct in prison, the selection of the sentencing court and prosecutor to make the determination would surely have been inappropriate. There is no reason to believe that the prosecutor or sentencing court would have any first-hand knowledge of the inmate's prison record. Rather, such information would be in the possession of the prison officials and in any event is a factor for the consideration of the parole board.
Viewed from this perspective it appears that if N.J.S.A. 30:4-123.51 is read literally, the punitive aspects of the sentence can never be fulfilled by the time of a shortened parole eligibility date. We reach this conclusion for the following reasons. The sentencing court must have included within its disposition punitive considerations. We may reasonably presume that a judge imposing criminal sentences is aware of parole eligibility laws and that from the presentence report will know the defendant's prior record. See R. 3:21-2. Events subsequent to sentencing, such as evidence of rehabilitation, can have no bearing on the punitive aspect of a sentence since a sentence had to have been imposed on the basis of events which had taken place before its imposition, which events accordingly could not be changed. Therefore, any shortening of the parole eligibility date will frustrate the sentencing judge's intentions with respect to punishing the defendant. Accordingly, if N.J.S.A. 30:4-123.51 is read literally in every case, the sentencing court and the prosecutor could notify the Parole Board that the punitive aspects of the sentence will not have been fulfilled when the potential shortened parole eligibility date is reached. *548 But obviously the Legislature could have intended no such absurd result. See State v. Gill, 47 N.J. 441, 444 (1966).
We believe that N.J.S.A. 30:4-123.51 should be interpreted reasonably. The Legislature undoubtedly believed that in some cases the prosecutor or sentencing court would not advise the Parole Board that the punitive aspects of a sentence had not been fulfilled but the board would be so advised in serious cases in which as a matter of policy the sentencing court or prosecutor objected to an earlier eligibility date for the inmate.[3] We also think it is clear that a reason could in any case be articulated to support an objection to an earlier parole eligibility date. This is obvious since the earlier date will necessarily frustrate the sentencing judge's intention. Thus, a statement that the original sentence included punitive aspects and was imposed with reference to a then extant parole eligibility date so that its punitive aspects could not be satisfied by an earlier date would literally give a reason not to allow the maximum change. Yet the Legislature could not have intended that such a statement be routinely made by the judge or prosecutor, for such a result would render provision for the maximum credit to be meaningless.
In fact, we doubt that it is possible to distinguish one case from another in determining whether the punitive aspects of a sentence have been fulfilled. Even a moderate sentence for a crime not egregious will include punitive aspects. It is difficult to understand why, if the parole eligibility date for an incarcerated inmate in such circumstances is advanced, that the punitive aspects of his sentence, however moderate they may have been, will be fulfilled. A distinction in degree of culpability for criminal conduct is presumably made when the sentences are imposed. Thus, regardless of the nature of the crime, unless the sentence as served extends at least until the inmate reaches *549 parole eligibility as it existed when the inmate was sentenced, its punitive aspects will not have been fulfilled.
In fact, the Legislature, in enacting N.J.S.A. 30:4-123.51, conferred a benefit on the repeat offender. The provision permitting objection by the sentencing judge or the prosecutor limited the scope of the benefit. We have no doubt that what the Legislature contemplated was that in cases of serious offenses a portion of the benefit of the shortened date not be given and the authorities most familiar with the facts of the offense, the prosecutor and sentencing judge, determine whether the offense was serious. It is also clear that in making the decision to object to the maximum shortened date the judge or prosecutor necessarily states what is so in every case regardless of seriousness; the punitive aspects of the sentence will not have been fulfilled when a shortened parole eligibility date is reached. In cases that are less serious the Legislature contemplated that ordinarily the prosecutor or sentencing judge will not notify the Parole Board that the punitive aspects of the sentence have not been fulfilled. This is not to say, of course, that the judge or prosecutor will have considered them to have been fulfilled. But N.J.S.A. 30:4-123.51 does not require that the prosecutor or sentencing judge notify the Parole Board in a particular case that the punitive aspects of a sentence have not been fulfilled, even if that is what they believe. Rather, the section states what will happen if such notification is in fact given. Clearly, there is room for exercise of discretion as to whether to give the notification and thus limit the benefit conferred. But in every case the judge or prosecutor could give a technically correct statement to the Parole Board that the punitive aspects of a sentence will not have been fulfilled by the time that an advanced parole eligibility date is reached.
As we construe N.J.S.A. 30:4-123.51, we see no constitutionally protected interest under the Due Process Clause implicated by this case. We think that appellant's due process arguments are foreclosed by Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, *550 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), and Jago v. Van Curen, ___ U.S. ___, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981).
Greenholtz held that the Due Process Clause does not give an inmate a constitutionally protected liberty interest simply because the state provides for the possibility of parole. Thus, the fact that N.J.S.A. 30:4-123.51 holds out the possibility of an advanced parole eligibility date is of no assistance to appellant. Further, we see no basis for a due process objection to N.J.S.A. 30:4-123.51 on a theory that the statute itself creates a legitimate expectation of parole at the earlier date provided for advanced parole under it. In fact, the section itself limits its full applicability to cases in which the prosecutor or sentencing judge does not indicate that the punitive aspects of the sentence have not been fulfilled. When the prosecutor or sentencing judge does indicate that the punitive aspects have not been fulfilled, then the reasonable expectation of the inmate is that he be given only a portion of the benefit which would otherwise be accorded him.
In Jago the Supreme Court of the United States dealt with an Ohio statute which in some respects is similar to N.J.S.A. 30:4-123.51. There the inmate pleaded guilty to embezzlement and related crimes at a time when his parole eligibility date was March 1976. By a subsequent statute his parole eligibility date was advanced to some time in 1974. After appropriate proceedings the Ohio Parole Board ordered the inmate paroled. Subsequently, the board was informed that the inmate had been untruthful when he sought parole. Accordingly, the board, without a hearing, rescinded the order of parole. The Supreme Court held that due process did not require a hearing before the order for parole was rescinded.
It is difficult to understand how the Due Process Clause can be offended by N.J.S.A. 30:4-123.51 which, in fact, never awarded parole to appellant or even advanced his parole date to a date *551 earlier than that ultimately fixed by the board when, in Jago, an actual order for parole could be revoked without hearing. Surely, the inmate in Jago had a greater expectancy of parole than did appellant simply by the enactment of the Parole Act of 1979. At most appellant could hope for parole on the more advanced date established in N.J.S.A. 30:4-123.51 only if the judge or prosecutor did not state that the punitive aspects of the sentence had not been served and if appellant met the criteria of N.J.S.A. 30:4-123.53.
In Dumschat the Supreme Court of the United States dealt with a Connecticut statute which permitted a person sentenced to life imprisonment to apply for commutation of his life sentence. Commutation would accelerate his parole date. The record indicated that approximately three-fourths of the applications were granted. Nevertheless, the court held that the inmate was not constitutionally entitled to an explanation as to why his application had been rejected. We think that if the inmates in Dumschat were not entitled to an explanation of the basis on which a decision was made to deny them an earlier parole eligibility date, appellant should not be entitled to an explanation of why the prosecutor thought that the punitive aspects of his sentence would not be fulfilled by the earlier possible date.
Monks v. N.J. Parole Board, 58 N.J. 238 (1971), is not contrary. There our Supreme Court held that prisoners are entitled to a statement of reasons when denied parole. But that decision was made with reference to a statute which, in certain conditions, could entitle the inmate to a parole. See N.J.S.A. 30:4-123.14. Here we perceive that a determination that the punitive aspects of a sentence have not been served can never be incorrect. Further, Monks was not decided on the basis of constitutional requirements. Rather, the case turned on extra-constitutional grounds of fairness and rightness. See Avant v. Clifford, 67 N.J. 496, 520-521 (1975). Additionally, a statement of reasons why parole was denied could help guide the inmate's future conduct. 58 N.J. at 244. We cannot understand how an explanation *552 as to why the punitive aspects of a sentence have not been fulfilled can help an inmate fulfill them. We also note that Monks was concerned with an explanation of why an inmate was denied parole though he was eligible. We deal here with the different decision of whether an inmate should be eligible for parole.
We see no equal protection difficulties with N.J.S.A. 30:4-123.51. The section benefits any inmate whose parole eligibility is reconsidered. The section established two classifications: inmates with prior convictions who have committed an additional serious crime and inmates with prior convictions who have committed a less serious crime. All are benefited but the latter are benefited more. Surely, this is a rational classification and thus it should be sustained. Cold Indian Springs Corp. v. Ocean Tp., 81 N.J. 502, 512 (1980).[4]
Finally, we see no basis to require a statement of reasons on some nonconstitutional or state constitutional basis other than the Due Process or Equal Protection Clauses. N.J.S.A. 30:4-123.51 is a transition provision insofar as it deals with inmates whose parole eligibility date was fixed under prior law. Ultimately there will be no such inmate. The Legislature certainly could have continued the prior eligibility standard for inmates classified as repeat offenders under the Parole Act of 1948. Indeed, it did exactly that for offenders without prior offenses. N.J.S.A. 30:4-123.51(j). But it instead chose to confer a benefit on repeat offenders. Having done that, it is now urged that the court should confer further rights. We decline to do so, especially in the face of our view that per se the punitive aspects of a sentence can never be fulfilled if the parole eligibility date is advanced by the Parole Act of 1979.
*553 We are aware, of course, that in Monks v. N.J. Parole Bd., supra, 58 N.J. at 238, the Supreme Court required that the Parole Board state the reasons why parole was denied. We are also aware of the broad power of review of administrative decisions in the Superior Court. N.J.Const. (1947), Art. VI, § 5, par. 4. Nevertheless, a statement of reasons would only state the obvious  that the punitive aspects of the sentence have not been fulfilled. Further, we point out that the Legislature has expressly stated that the prosecutor or judge should not have to state the reasons for his conclusion that the punitive aspects of the sentence have not been fulfilled. We think that we should honor this.
We do not go so far as to say that a decision of the judge or prosecutor could never be questioned on appeal. If appellant alleged and demonstrated that the decision was made on some improper ground, it might be appropriate for this court on appeal to remand and require the sentencing judge or prosecutor to state the reasons for his decision. See English v. College of Medicine and Dentistry, 73 N.J. 20, 23 (1977). But here there is no suggestion made that the prosecutor was motivated by any improper consideration.
Affirmed.
NOTES
[1] The brief of the Attorney General makes representations as to appellant's prior convictions. While we do not suggest that the representations are incorrect, we find no support for them in the record.
[2] This date differs from that earlier stated by the board. We cannot reconcile the difference but need not do so to decide this appeal as the actual date is not raised as an issue.
[3] Any case in which a person is incarcerated is, of course, serious. We use serious in the text in the sense of comparing offenses with other offenses.
[4] If the classification were not valid, we would hold that all inmates with prior records be treated as though the punitive aspects of their sentences would not be fulfilled by the earlier date. As already explained, this is the fact. Identical treatment of all such inmates would preclude the equal protection argument.