with knowledge that Jansen had epilepsy, continued him in his employment as a meat cutter for eight years.

We see no need to address Jansen's contention that the trial judge refused to permit evidence directed to his argument that Food Circus did not make "reasonable accommodations" to his epilepsy. There was sufficient evidence presented, albeit on surrebuttal, in support of the trial judge's finding that Jansen rejected the offer of Food Circus for employment other than as a meat cutter. *See Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483–484 (1974).

Affirmed.

TAIWO TYEHIMBA, A/K/A DONALD BUNTING, APPELLANT,
v. NEW JERSEY STATE PAROLE BOARD, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 3, 1986—Decided November 20, 1986.

however, that such person must have been free from seizures for a period of one year, *see N.J.A.C.* 13:19–5.1, unless the review committee recommends less. *See N.J.A.C.* 13:19–5.7. Periodic reports as to the individual's case history, including a statement by the treating physician, must be submitted every six months for a period of two years from the date that approval is given to hold a driver's license and yearly thereafter. *See N.J.A.C.* 13:19–5.9.

Before Judges MORTON I. GREENBERG, J.H. COLEMAN and R.S. COHEN.

*Michael B. Einschlag,* Designated Attorney, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney; *Michael B. Einschlag,* of counsel and on the brief).

*Stephen P. Tasy,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Stephen P. Tasy,* on the brief).

The opinion of the court was delivered by

MORTON I. GREENBERG, P.J.A.D.

This matter comes on before the court on appeal from action of the respondent, New Jersey Parole Board, denying appellant, Taiwo S. Tyehimba, a full-step reduction in his sentence but allowing him a half-step reduction as authorized by *N.J.S.A.* 30:4–123.51(j). *See N.J. Parole Bd. v. Byrne,* 93 *N.J.* 192 (1983).

The circumstances leading to this appeal are not complicated. On October 12, 1979 defendant was sentenced to a total term of not less than 20 years and not more than 23 years for offenses arising from an armed bank robbery. He was subsequently sentenced to a consecutive term of not less than one year and not more than two years for a conspiracy to escape. Thus his aggregate sentence was not less than 21 years and not more than 25 years. These offenses were committed prior to the effective date of the New Jersey Code of Criminal Justice. *N.J.S.A.* 2C:1–1 *et seq.* Had the Parole Act of 1979, *N.J.S.A.* 30:4–123.45 *et seq.,* not been enacted, appellant's parole eligibility would have been fixed under the Parole Act of 1948, *L.*1948, *c.* 48, which required that a repeat offender serve a longer portion of his sentence before becoming eligible for parole than is required under the 1979 law. *See N.J. Parole Bd. v. Byrne,* 182 *N.J.Super.* 540, 543–544 (App.Div.1982), aff'd in part, rev'd in part 93 *N.J.* 192 (1983).

The Parole Act of 1979 granted a windfall to some inmates serving sentences subject to the Parole Act of 1948. While it provided that an inmate serving a minimum and maximum term would continue to be primarily eligible for parole on the basis of the 1948 act, the parole eligibility date for multiple offenders

such as appellant would be computed as if they had committed one fewer prior offense. *N.J.S.A.* 30:4–123.51(j); *N.J. Parole Bd. v. Byrne, supra,* 93 *N.J.* at 196–197. However, this full-step reduction in the parole eligibility date would not be allowed if the prosecutor or sentencing judge advised the parole board that the punitive aspects of the sentence had not been fulfilled. In that instance, the inmate would receive only one-half of the reduction in the eligibility date that he would have otherwise been awarded. *Ibid.* The Parole Act of 1979 provided that, except to the extent constitutionally mandated, the advice of the judge or prosecutor need not be supported by reasons. In view of the circumstance that *N.J.S.A.* 30:4–123.51(j) was applicable to appellant, his case was referred to the sentencing judge and the prosecutor and, as the prosecutor objected to the full-step reduction, the parole board allowed him only a half-step reduction and so advised him on February 6, 1981.

Subsequently the Supreme Court decided *N.J. Parole Bd. v. Byrne, supra,* 93 *N.J.* 192. There the inmates appealed from denial of full-step reductions refused when the prosecutors advised that they be denied. The court held that the loss of the full-step reduction implicated a liberty interest protected by the due process clause. It concluded that the process due was as follows:

> Only a few, basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context. We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons. No hearing, confrontation, or counsel issues are implicated here. [*Id.* 93 *N.J.* at 211]

As a consequence of the Supreme Court decision, on June 20, 1983 the parole board wrote the judge and prosecutor in appellant's case and requested a written statement of reasons, if there were any, for their objection to the whole-step reduction. The board requested that the reasons be sent to appellant who could respond to them. A copy of the letter of June 20, 1983 was sent to appellant. While the judge did not

respond, on July 12, 1983 the prosecutor sent a letter to the board outlining his objections as follows:

> Prior to his involvement in the armed robbery of March 9, 1979, this defendant had experienced many prior arrests, convictions, incarcerations, parole and violations of parole. The defendant began his adult criminal career at nineteen years of age with a conviction in 1968 for unlawful possession of a firearm and also shoplifting. In 1970, this defendant was sentenced to nine to fifteen years in the New Jersey State Prison on an armed robbery conviction. That conviction also resulted, in February, 1970, in a violation of probation resulting in the defendant being sentenced to Yardville.
>
> After serving a lengthy term in the State Prison complex for an armed robbery, Donald Bunting was paroled on September 12, 1978. The State had hoped that Donald Bunting's custodial sentence would have punished him and deterred him from any further involvement with the Criminal Justice System. Instead, Donald Bunting committed a more serious offense on March 9, 1979, less than six months after being released on parole. Mr. Bunting and two other accomplices brazenly walked into a local bank in Cranford, New Jersey armed with two handguns and a sawed-off shotgun. Mr. Bunting and his confederates then proceeded to terrorize the bank employees and the customers. It is quite apparent to anyone that the day time bank robbery posed a substantial risk of death or serious bodily injury to anyone present at the time. The terror which this defendant inflicted upon the bank employees and the customers once again evidenced Mr. Bunting's total disregard for the value of human life and his lack of respect to the rights of anyone. Mr. Bunting continues to demonstrate that his prior punishment has not served to educate him or cause him to conform to the law. He is in need of a sentence which is punitive in nature, as well as one which will hopefully deter him and others from a life of crime. On April 3, 1979, while awaiting trial for the aforementioned bank robbery, Donald Bunting and one of his accomplices, Clifford Roberts, attempted to escape from the Union County Jail.
>
> Time after time, Donald Bunting has demonstrated, through a failure to effect rehabilitation, that he cannot and will not avail himself of the rehabilitative facilities within the Criminal Justice System. Mr. Bunting has also demonstrated that he is a career criminal, living from conviction to conviction within the New Jersey Penal System. This defendant is clearly in need of a sentence which will isolate him from society for an extended period of time.
>
> It would be an insult to the citizens of Union County and of New Jersey to afford Donald Bunting a 'full-step' reduction. The evidence indicates that this defendant would take advantage of a 'full-step' reduction only to commit additional violent crimes against innocent members of the public.

On August 17, 1983 appellant responded to the board as follows:

> It should be noted from the outset that the State [p]roceeded against me under the theory of aiding and abetting and did not at any time contend that I was actually in the bank during the course of the robbery. Though I must sustain the same degree of culpability as my accomplices, their actions were not as inflammatory as the State now alleges.

It is a fact, supportable in the evidence, that no terrorizing of bank employees or customers ever transpired. The record clearly shows that only three (3) bank employees were privy to the ongoing robbery, and only one of them saw a holstered handgun. This fact is also not congruent with the State's contention of a substantial risk of death or serious bodily injury as I believe that if there can be said anything decent about this crime it is the obvious intent of the perpetrators to minimize its exposure to innocent people and to minimize its violence.

I concede, as I must, the State's enumeration of my past convictions and prior custodial commitments. I do, however, deviate from the State's conclusion of a need to keep me isolated from society for an extended period of time. The State has obviously abandoned all hope that I will ever assume the posture of responsible citizenship, but this is an abandonment to which I have not reconciled myself to.

I recognize that the State has an interest in seeing that those who are justly convicted are appropriately punished, and I do not suggest that the State detract from its obligations. However, I do not feel, for the reasons stated above, that a full-step reduction in my offender status would amount to an insult to our citizenry, but rather a long overdue personal redemption.

On September 6, 1983 the board sent appellant's letter to the prosecutor and indicated that unless the objection to the full-step reduction was withdrawn in writing, appellant would be awarded the half-step reduction. Inasmuch as the objection was not withdrawn, the board allowed appellant a half-step reduction and so advised him on October 13, 1983. Appellant has appealed from the action of the board.

On this appeal appellant contends that the board's denial of a full-step reduction was arbitrary and capricious because it was based on errors and mistakes of facts thus depriving him of due process of law. He further contends that the procedure followed was tantamount to resentencing and violated due process protections as it was done by the prosecutor and was also violative of equal protection of law as in some instances the judge resentences and in others it is done by the prosecutor.

We affirm. It is quite clear that the procedure followed by the parole board was exactly that set forth by the Supreme Court in *N.J. Parole Bd. v. Byrne, supra,* 93 *N.J.* at 210. The court clearly indicated that the process due the inmate was notice of the proceedings, a statement by the judge or prosecutor as to why the punitive aspects of the sentence had not been

fulfilled and an opportunity for the inmate to respond in writing to that statement of reasons. But there was not to be a hearing on the matter. *Id.* at 211.

We recognize, of course, that there is a dispute between appellant and the prosecutor regarding his role in the robbery. We also are aware that the Supreme Court indicated that the prosecutor might make an error over so simple a matter as the identity of an offender or of the offense. *Ibid.* The procedure it required would allow the prosecutor to correct that error. But we are quite certain that the court intended that there be no basis for appeal simply because of arguments over the details of an offense.

■ We see no merit to appellant's claim that the prosecutor's actions amount to a resentencing. While it is true that a sentence may and sometimes must include a provision making a defendant ineligible for parole, *see N.J.S.A.* 2C:43–6(b) and (c), in general parole eligibility is a matter of law. *N.J.S.A.* 30:4–123.51. But there are other instances in which administrative decisions affect parole eligibility. We do not regard their application as a resentence of a defendant. *See N.J.S.A.* 30:4–140; *N.J.S.A.* 30:4–123.52.

Affirmed.